# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.

**JASON R. KLEIN**,

    Defendant.

No. 17-3056-01-CR-S-MDH

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Thomas M. Larson, Acting United States Attorney, and Casey Clark, Assistant United States Attorney, and the defendant, Jason R. Klein ("the defendant"), represented by Mark Milton.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to the sole count of the information charging him with a violation of 18 U.S.C. § 1960(a), that is, conducting an unlicensed and unregistered money transmitting business. By entering into this plea

agreement, the defendant admits that he knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty are as follows:

**Background on Bitcoin**

Bitcoin are a decentralized form of electronic currency, existing entirely on the Internet and not in any physical form. The currency is not issued by any government, bank, or company, but rather is generated and controlled automatically through computer software operating on a "peer-to-peer" network. Bitcoin transactions are processed collectively by the software-enabled computers composing the network.

To acquire bitcoin in the first instance, a user typically must purchase them from a bitcoin "exchanger." In return for a commission, bitcoin exchangers accept payments of currency in some conventional form, including cash, and exchange the money for a corresponding number of bitcoin, based on a fluctuating exchange rate. Exchangers also accept payments of bitcoin and exchange the bitcoin back for conventional currency, again, charging a commission for the service.

Once a user acquires bitcoin from an exchanger, the bitcoin are kept in a "wallet" associated with a bitcoin "address," designated by a complex string of letters and numbers. The "address" is analogous to the account number for a bank account, while the "wallet" is analogous to a bank safe where the money in the account is physically stored. Once a bitcoin user funds his wallet, the user can then use bitcoin in the wallet to conduct financial transactions over the Internet by transferring bitcoin from his bitcoin address to the bitcoin address of another user.

All bitcoin transactions are recorded on a public ledger known as the "block chain," which is stored on the peer-to-peer network on which the bitcoin system operates. The block chain serves, among other purposes, to prevent a user from spending the same bitcoin more than once. However, the block chain reflects only the movement of funds between anonymous bitcoin addresses and, therefore, cannot by itself be used to determine the identities of the persons involved in the transactions. Only if one knows the identities associated with each bitcoin address involved in a set of transactions is it possible to meaningfully trace funds through the system.

**Evidence of Conducting an Unlicensed and Unregistered Money Transmitting Business – 18 U.S.C. § 1960(a)**

The defendant, Jason R. Klein, was the founder of two technology-based companies: Logic Forte and Datality Networks. Logic Forte purportedly provided consulting and computer

programming assistance for the restaurant industry. Datality Networks purportedly provided Internet housing and network consulting.

The defendant was also the President of the Association of Information Technology Professionals ("AITP") – Southwest Missouri. AITP was a professional association that focused on technology education for business professionals. AITP's southwest Missouri chapter had approximately 230 members and was the largest chapter in the United States.

The defendant was a resident of Christian County, in the Western District of Missouri.

From at least in or about November 2014, through in or about July 2016, the defendant represented himself on the Internet to be a bitcoin exchanger, through the use of the username "jrklein" on the website www.localbitcoins.com. After November 14, 2014, but prior to January 29, 2015, an undercover agent with the Internal Revenue Service – Criminal Investigation ("UCA1") identified "jrklein" as a bitcoin exchanger on www.localbitcoins.com. On January 29, 2015, UCA1 contacted the defendant, through username "jrklein," via an advertisement on the website, www.localbitcoins.com. The advertisement was for "buy-bitcoins-with-cash-springfield-mo-usa." During the initial contact through the website, Klein represented to UCA1 that his rate included a 10% commission "for an in-person $1000 cash exchange." Klein agreed to meet UCA1 in Springfield, Missouri, to exchange $1,000 cash for bitcoin.

On or between February 6, 2015, and July 27, 2016, the defendant met with UCA1 and/or a second UCA ("UCA2"). During these meetings, UCA1 and/or UCA2 stated to the defendant that they possessed currency and they wanted to exchange their currency for bitcoin. On numerous occasions during this timeframe, the defendant, acting with another, accepted said currency from UCA1 and/or UCA2 and exchanged it for varying amounts of bitcoin, which he then gave to UCA1 and/or UCA2.

On or about the dates set forth below, in Greene County, within the Western District of Missouri, the defendant, acting with another, knowingly conducted a financial transaction affecting interstate commerce:

| DATE | FINANCIAL TRANSACTION |
|---|---|
| February 6, 2015 | The defendant paid approximately 4.095 bitcoin for United States currency, in the amount of $1,000.00. |
| March 4, 2015 | The defendant, acting with another, paid approximately 6.4 bitcoin for United States currency, in the amount of $2,000.00. |
| July 14, 2015 | The defendant paid approximately 24 bitcoin for United States currency, in the amount of $7,640.00. |
| September 9, 2015 | The defendant, acting with another, paid approximately 58 bitcoin for United States currency, in the amount of $15,000.00. |
| July 27, 2016 | The defendant paid approximately 5 bitcoin for United States currency, in the amount of $3,600.00. |

Each of the transactions above occurred through the in-person exchange of United States currency and an electronic transfer of bitcoin to and through Missouri, and elsewhere, through the use the Internet. Additionally, each of the transactions above included a fee that Klein, or another, charged the UCAs, and the total amount of fees paid to Klein, and another individual, were not less than $2,122.68. At no point during the time period of February 6, 2015 to July 27, 2016 was the defendant a licensed money transmitter with the State of Missouri or with the Financial Crimes Enforcement Network, as required by federal and State of Missouri law.

Through these actions, on or between February 6, 2015, and July 27, 2016, the defendant, acting with another, knowingly and willfully conducted, controlled, managed, supervised, directed, and owned all and part of a money transmitting business affecting interstate commerce, to wit, a bitcoin exchange service, operated under username "jrklein," which (i) was operated without an appropriate money transmitting license from the State of Missouri, where such operation is punishable as misdemeanor or a felony, and (ii) failed to comply with the money transmitting business registration requirements set forth in Title 31, United States Code, Section 5330, and the regulations promulgated thereunder, all in violation of Title 18, United States Code, Sections 1960(a) and 2.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to the information charging him with conducting an unlicensed and unregistered money transmitting business, pursuant to 18 U.S.C. § 1960(a), the minimum penalty the Court may impose is probation, while the maximum penalty the Court may impose is not more than five (5) years of imprisonment, a $250,000 fine, three (3) years of supervised release, and a $100 mandatory special

assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class D felony.

      6.    **Sentencing Procedures.**  The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable;"

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three (3) years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two (2) years, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three (3) years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

    i. Within 10 days of the acceptance of this plea agreement, at the request of the United States Attorney's Office, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of

financial information that the defendant submits to the United States Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility.

 j. At the request of the United States Attorney's Office, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of restitution.

 7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to his interaction and transactions with undercover federal agents in Springfield, Missouri between November 2014 and July 2016, for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charge and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further

understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8. **<u>Preparation of Presentence Report</u>.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **<u>Withdrawal of Plea</u>.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

   b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2S1.3, which provides for a **base offense level of ten (10)**, due to the fact that the value of the funds is not less than $29,240 and not more than $40,000;

   c. The parties do not agree to the applicability of the two (2) – level increase under U.S.S.G. § 2S1.3(b)(1)(A). At the sentencing hearing, the Government will assert that the enhancement applies because the defendant believed that the funds were proceeds of unlawful activity or were intended to promote unlawful activity. The defendant will assert that the enhancement does not apply;

   d. The provisions under U.S.S.G. § 2S1.3(b)(3) do not apply;

   e. Pursuant to U.S.S.G. § 3B1.3, a **two (2) – level increase** is appropriate, because the defendant used a special skill in a manner that significantly facilitated the commission or concealment of the offense;

   f. The defendant has admitted his guilt and clearly accepted responsibility for his actions. Therefore, he is entitled to a **two (2) – level reduction** pursuant to § 3E1.1(a) of the Sentencing Guidelines;

   g. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

   h. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

   i. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range. The defendant remains free to seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the Government to not seek an upward departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law,

including any sentence outside the applicable Guidelines range that is not "unreasonable;"

  j. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and,

  k. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

  11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

  12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

  13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. comment on the evidence supporting the charge in the information;

c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and,

d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a. the right to plead not guilty and to persist in a plea of not guilty;

b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and,

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant

also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

   a. The Court may order restitution to the Internal Revenue Service for the offense to which the defendant is pleading guilty. The defendant agrees to pay restitution in an amount not less than $2,122.68, for the profits earned by the defendant, and another, through the commission of the offense. This restitution will be paid to the Internal Revenue Service, pursuant to 18 U.S.C. § 3663(a)(3). The defendant agrees that the Court may order restitution in connection with all other uncharged related criminal activity. The defendant further agrees that the total amount of restitution reflected in this agreement results from the defendant's illegal conduct.

   b. The defendant agrees to pay restitution as ordered by the Court in any restitution order entered pursuant to this plea agreement.

   c. The defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

   d. The defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or

compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the Internal Revenue Service for the time periods covered by this agreement or any other time period.

e. The defendant understands that he is not entitled to credit with the Internal Revenue Service for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to his particular liability.

f. All restitution payments shall be paid by check, shall include this case number in the memo line, and shall be delivered to the Clerk's office or addressed to the Clerk's office at the following address:

> United States District Court Clerk's Office
> Western District of Missouri
> Charles Evans Whittaker Courthouse
> 400 E. 9th Street, Rm. 1510
> Kansas City, Missouri 64106

g. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

h. Within 10 days of the execution of this plea agreement, at the request of the United States Attorney's Office ("USAO"), the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

i. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of restitution.

j. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

k. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the **Special Assessment of $100** by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The

defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

l. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

m. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered plea of guilty shall remain in effect and cannot be withdrawn.

17. **Order of Prohibition.** The defendant agrees to stipulate and consent to an order of prohibition from participation in any action that would subject him to money transmitting licensing or registration requirements throughout the period of his post-release supervision or probation.

18. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

19. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

20. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

21. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

22. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

                                    THOMAS M. LARSON
                                    Acting United States Attorney

Dated:   5/2/17                              */s/ Casey Clark*
                                    CASEY CLARK
                                    Assistant United States Attorney

      I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated:   5/2/17                              */s/ Jason R. Klein*
                                    JASON R. KLEIN
                                    Defendant

      I am defendant Jason R. Klein's attorney. I have fully explained to him his rights with respect to the offense charged in the information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Jason R. Klein's decision to enter into this plea agreement is an informed and voluntary one.

Dated:   5/2/17                              */s/ Mark Milton*
                                    MARK MILTON
                                    Attorney for Defendant