IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | **Case No: 17-03056-01-CR-S-MDH** |
| **JASON R. KLEIN,** | |
| Defendant. | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Thomas M. Larson, Acting United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on September 6, 2017. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the Government respectfully recommends that this Court sentence the defendant, Jason R. Klein, to a term of imprisonment of 13 months for his conviction of conducting an unlicensed and unregistered money transmitting business, in violation of 18 U.S.C. § 1960(a). The Government further recommends the term of imprisonment be followed by a two-year term of supervised release and that the Court order the defendant to pay $2,122.68 in restitution to the Internal Revenue Service.

### I. BACKGROUND

On May 2, 2017, the defendant, Jason R. Klein, after consenting to being charged by information, pleaded guilty to one count of conducting an unlicensed and unregistered money transmitting business, pursuant to a written plea agreement. (D.E. 1, 2, 5, 11.)[1] The United States

---

[1] "D.E." refers to the docket entry of the instant district court criminal case, case number 17-03056-01-CR-S-MDH, and any associated documents.

Probation Office ("USPO") filed its preliminary presentence investigation report ("PSR") on June 23, 2017. (D.E. 16.) Neither party submitted an objection to the preliminary PSR and the USPO filed its final PSR on July 18, 2017. (PSR Adden.)[2] The sentencing hearing is scheduled for September 6, 2017. (D.E. 18.)

## II. FORMULATION OF THE DEFENDANT'S SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines should be applied in an advisory fashion to meet constitutional demands. *Id.* at 258. While this Court is not bound to impose a sentence based solely on the Guidelines, the Court "nevertheless must consult the Guidelines to calculate a defendant's sentence because the Guidelines are the critical starting point for fashioning a reasonable sentence [under the statutory sentencing factors]." *United States v. Gregg*, 467 F.3d 1126, 1128 (8th Cir. 2006) (internal quotation omitted). Pursuant to the Sentencing Guidelines, the Court "shall determine the kinds of sentencing and the guideline range as set forth in the guidelines by applying the provisions of this manual . . . " U.S.S.G. § 1B1.1(a) and (b). After considering the Sentencing Guidelines, the Court, "shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." U.S.S.G. § 1B1.1(c) and 18 U.S.C. § 3553(a).

After making that determination, the district court, utilizing the § 3553(a) sentencing factors, can impose a more severe or more lenient sentence, as long as it is reasonable. *See Booker*, 543 U.S. at 263-65. The § 3553(a) factors relevant to this matter are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct;

---

[2] "PSR Adden." refers to the presentence investigation report addendum, filed on July 18, 2017.

> (C) to protect the public from further crimes of the defendant; . . . (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines]; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of a sentencing set forth in 18 U.S.C. § 3553(a). *Id*. As explained below, a sentence of 13 months' incarceration satisfies the criteria set forth in § 3553(a) and is a reasonable and just sentence given the facts and circumstances of the case now before this Court.

### III. DISCUSSION

#### A. Statutory and Guidelines Calculations

As a result of the defendant's plea, his statutory maximum sentence for the class D felony of conducting an unlicensed and unregistered money transmitting business is not more than five years' imprisonment. (PSR 11, ¶ 49.) The PSR found that the defendant's criminal history category was I and the total offense level was 12. *Id*. at 12, ¶ 50. The PSR stated the Court may impose a term of supervised release of not more than three years. *Id*. at 12, ¶ 52. Based on the defendant's criminal history category of I and a total offense level of 12, the Guidelines imprisonment range is ten months to 16 months within Zone C of the Sentencing Table, with the defendant ineligible for probation, and a Guidelines supervised release term of one year to three years. *Id*. at 12, ¶¶ 50, 53, 55.

#### B. Statutory Sentencing Factors

##### 1. *Nature and Circumstances of the Offense and History of the Defendant*

The recommended sentence of 13 months appropriately reflects "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C.

§ 3553(a)(1). "In fashioning a 'sentence sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a), 'district courts are not only permitted, but required, to consider the history and characteristics of the defendant.'" *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007)). Consequentially, "factors such as a defendant's age, medical condition, prior military service, family obligations . . . etc., can form the bases for a variance even though they would not justify a departure." *Id*. at 830-31 (citing *United States v. Ryder*, 414 F.3d 908, 920 (8th Cir. 2005)).

The nature and circumstances of this case are discussed thoroughly in paragraphs 5 through 13 of the PSR, and paragraph 3 of the plea agreement. (PSR 4-5, ¶¶ 5-13; D.E. 11, p. 2-4, ¶ 3.)

In this particular case, the defendant abused his specialized knowledge of bitcoin and bitcoin transactional processes to conduct a money transmitting business that was not licensed or registered with the appropriate authorities. *Id*. Additionally, while operating said unlicensed business, the defendant attempted to assist individuals unfamiliar to him with laundering approximately $29,240 in represented criminal proceeds through the exchange of currency for bitcoin with the defendant. (PSR 5, ¶¶ 9-11.) The defendant received approximately $2,122.68 in commission for these transactions. The defendant's actions were not one of necessity, but of choice, in order to financially enrich himself.

The defendant is a 37-year-old male who has a criminal history score of zero and a criminal history category of I. *Id*. at 2, 7, ¶¶ 30-31. He reported no childhood hardships and stated that he is in good physical and mental health. *Id*. at 7-8, ¶¶ 36, 39-40. The defendant reported no history of substance abuse. *Id*. at 8, ¶ 42. The defendant is married and he and his wife have one child together. *Id*. at 8, ¶ 38. He completed high school and received his bachelor's degree for computer

engineering in 2011.  *Id*. at 8, ¶ 42.  The defendant currently owns and operates three businesses based in Nixa, Missouri, and Newton, Kansas, respectively.  *Id*. at 8, ¶ 43.

In making its recommendation, the Government has taken into consideration the instant offense, the defendant's relevant conduct, and the fact the Government did not pursue prosecution for other crimes, which would have subjected him to punishment that is more significant.  *See* 18 U.S.C. § 1956(a)(3)(A) and (C).  The Government has weighed that information with some of the mitigating factors of the defendant's characteristics and history, including his cooperation during the investigation of this crime, his prompt acceptance of responsibility, and his lack of criminal history.  The Government believes that its recommendation reflects the appropriate balance between the potential mitigating and aggravating factors associated with the nature of his criminal conduct.

The Guidelines range in this case is ten months to 16 months.  The Government respectfully asserts that a sentence of 13 months is appropriate given the nature and circumstances of this case and the defendant's history.

### 2. *Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  Such considerations reflect the need for retribution, the need to make the punishment fit the crime, and the need not just to punish, but to punish justly.

In this case, the seriousness of the defendant's crime is reflected in the actions described above, as well as in statute and the Sentencing Guidelines.  The defendant's operation of an unlicensed and unregistered money transmitting business subjects him to a maximum five-year prison sentence.  18 U.S.C. § 1960(a).

5

While the Sentencing Guidelines take the actions of the defendant into consideration when determining a sentencing range, the defendant's offense in this case reveals an illegal money transmitting business cloaked under the anonymous umbrella of bitcoin, all for the purpose of financial gain. The defendant then took the extra step of accepting represented criminal proceeds as a part of his illegal business. The defendant's actions in this case demonstrate a willingness and eagerness to take advantage of bitcoin's untraceable features and utilize the digital currency in facilitating criminal activity.

Whether a conviction is for operating an unlicensed money transmitting business or for money laundering, the amount of money flowing through such operation is a direct measure of the societal harm caused by the offense. Every transaction that the defendant helped these individuals facilitate through bitcoin exchange was a potential crime in waiting. The more money that the defendant helped these individuals move through bitcoin, the more likely it was that they would be able to sustain and grow their represented unlawful enterprise.

While the defendant may argue that his personal gain from such transactions was not substantial, the extent of his gain is not the real issue. The true issue is the potential harm caused to others from his conduct; and that harm directly correlates with the amount of money involved in the offense. "Section 1960 was passed as an anti-money laundering statute, designed 'to prevent the movement of funds in connection with drug-dealing.'" *United States v. Faiella*, 39 F.Supp.3d 544, 545-46 (S.D.N.Y. 2014) (quoting *United States v. Bah*, 574 F.3d 106, 112 (2d Cir. 2009) (citing H.R. Rep. No. 107-250(I), at 54 (2001))). The value of the funds the defendant moved for his customers reflects the extent to which he undermined this congressional intent and, thus, is an accurate barometer of the seriousness of his offense. *See United States v. Bariek*, No. 05 CR 150 (JCC), 2005 WL 2334682, at *2 (E.D. Va. 2005) (applying 18-level enhancement in Section 1960

6

case based on the volume of funds processed by the business: "The more money that is transmitted by an unlicensed business, the more likely that some of that money will find its way into criminal hands, and hence, the greater the harm caused.")

The defendant may claim that he acted out of a desire to promote bitcoin.  However, his actions clearly exhibit that his general intent was to generate profits for his business, and he was willing to do so by catering to new customers who represented that they had a need to exchange their criminal proceeds for bitcoin in order to further their illegal operation.  The defendant's utilization of this technology through his specialized knowledge for these purposes exhibits his lack of respect for the laws that govern these transactions.

A 13-month sentence would reflect the seriousness of the offense, promote respect for the law, and, given that it is in the middle of the applicable Guidelines range, provide punishment that is sufficient, but not greater than necessary.

### 3. *Need to Afford Adequate Deterrence to Criminal Conduct*

A 13-month sentence would also "afford adequate deterrence to criminal conduct" and would "protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(B)-(C).  The Government asserts that the more serious the crime and the greater the defendant's role in it, the more important it is to send a strong and clear message that will not only deter others, but will also deter the specific defendant.

In this case, the defendant was the leader and organizer of this criminal activity, and he utilized bitcoin, a digital currency ripe for use as a financial tool within a criminal enterprise, in order to conceal such activity.  The defendant's unlicensed business ended only due to its discovery by law enforcement.  Given the public nature of his advertisement and the hidden nature of bitcoin

transactions, there is no telling how long and to what extent the defendant's illegal business operated.

The use of digital currencies to transmit funds is an area of growing anti-money laundering concern and the relatively few cases that involve allegations of using bitcoin to facilitate a § 1960 crime are closely watched. The Government does not contest that bitcoin has legitimate uses. However, as evidenced by the defendant's criminal conduct, as well as such conduct by others, bitcoin and other digital currencies pose very real and serious new money-laundering risks, as they make it possible to transfer funds across the globe at the click of a button, and to do so anonymously, outside traditional financial systems. Effective regulatory compliance by digital currency exchangers and money transmitting businesses utilizing such currency is essential to control and combat these risks.

Regulatory authorities have limited resources available to audit such exchangers and money transmitting businesses. Consequently, they must depend to a large degree on good-faith compliance by these businesses. Where individuals willfully fail to comply with the applicable requirements, it is important that the offenders receive a substantial punishment in order to deter others, because these criminal activities are so difficult to detect.

Thus, the Court's sentence should send a clear message to other digital currency exchangers, and money transmitting businesses that utilize bitcoin, that flouting these rules comes with real and substantial consequences. A sentence of imprisonment sends the strong and necessary message that these rules are not a mere suggestion, or a request; they are the law and require adherence. Unless the defendant receives serious punishment, many in the digital currency industry will draw the conclusion that these laws need not be taken seriously. That is precisely the wrong message that needs to be heard by others within the community.

While this case is certainly not controlling within the Eighth Circuit, in *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006), the Court noted that generally "economic and fraud-based crimes are . . . prime candidates for general deterrence. Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." Such an argument can be made in this case as this educated defendant certainly understood the unlawfulness of his actions and the risks associated with his criminal conduct, yet those penalties were outweighed by the defendant's desire to reap the financial rewards from his dealings.

As such, the Government believes that a term of imprisonment in this circumstance is appropriate. Such a sentence is essential to both protect the community and educate this defendant that any future criminal behavior will ensure even lengthier periods of incarceration. The Government asserts that a 13-month sentence will provide a deterrent to this defendant and those with a similar history who engage in similar criminal conduct, while sending a message that this type of activity will not be tolerated.

### 4. *Need to Protect the Public from Further Crimes of the Defendant*

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877-78 (7th Cir. 2007)). The defendant has shown that he is a financial danger to the community, as he willingly engaged in financial transactions with individuals who represented themselves as engaged in criminal activity, using their purported criminal proceeds in such transactions. Based upon the defendant's history and characteristics, it is clear that society is in need of protection from him, and a 13-month sentence will protect the public from future crimes of this defendant.

9

5. *<u>Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct</u>*

A sentence of 13 months would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). From the outset, a correct calculation of the Guidelines range protects against *unwarranted* disparities among *similarly situated* defendants. *See Gall v. United States*, 552 U.S. 38, 55 (2007) ("avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges") (emphasis added). Given the Guidelines range, the relevant conduct regarding the nature of the proceeds he accepted, and the defendant's lack of criminal history, the Government's mid-range recommendation reflects a sentence that would be consistent with sentences received by those with similar criminal history and conduct.

## IV. <u>CONCLUSION</u>

Ultimately, 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory Guidelines range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to deter this defendant and others from similar future criminal conduct, and any other statutory sentencing factors be considered in reaching an appropriate sentence.

Accordingly, the Government respectfully requests that this Court impose a sentence of 13 months' imprisonment to be followed by a two-year term of supervised release for the defendant's

conviction under 18 U.S.C. § 1960(a). The Government also requests that this Court order the defendant to pay restitution of $2,122.68 to the Internal Revenue Service.

                                          Respectfully submitted,

                                          THOMAS M. LARSON
                                          Acting United States Attorney

                                          */s/ Casey Clark*
                                          Casey Clark
                                          Assistant United States Attorney
                                          Western District of Missouri
                                          901 St. Louis Street, Suite 500
                                          Springfield, Missouri 65806
                                          (417) 831-4406

**CERTIFICATE OF SERVICE**

  I hereby certify that on this the 1st day of September 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

                 */s/ Casey Clark*
                 Casey Clark
                 Assistant United States Attorney